UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

     -against-                                1:10-CV-00606 (LEK/DRH)

CHRISTOPHER W. BASS; SWISS
CAPITAL HARBOR-USA, LLC;
SWISS CAPITAL HARBOR FUND A
PARTNERS, L.P.; SWISS CAPITAL
HARBOR FUND B PARTNERS, L.P.;
and SWISS CAPITAL HARBOR
FUND C PARTNERS, L.P.,

                Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I.     INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff")  brought this action

against Defendants alleging violations of §§ 5(a), 5(c), and 17(a) of the Securities Act of 1933

("Securities Act"); and of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act").

Complaint (Dkt. No. 1) ¶ 6.  After application by the SEC, the Clerk of the Court executed

Certificates of Default against each Defendant on October 6, 2010.  Entry of Default (Dkt. No.

9).  The SEC now seeks partial default judgments against Defendants enjoining them from

further violations of federal securities laws.  See Motion for default judgment (Dkt. No. 10)

("Motion").  The SEC also requests leave to seek disgorgement, prejudgment interest, and civil

monetary penalties against Defendants after the criminal case pending against Defendant

Christopher W. Bass ("Defendant Bass" or "Bass")  before the Court is resolved.  See United

States v. Christopher Bass, No. 10-CR-166 (N.D.N.Y.) (Kahn, J.).

## II.    BACKGROUND

In its Complaint, Plaintiff alleges that Defendants violated §§ 5(a), 5(c), and 17(a) of the

Securities Act, as well as § 10(b) of the Exchange Act and Rule 10b-5 thereunder.  Compl. ¶ 6

(citing 15 U.S.C. §§ 77e(a), (c); 77q(a); 78j(b); 17 C.F.R. § 240.10b-5).  Plaintiff claims that

Defendants operated a Ponzi scheme during the period of January 2007 through June 2009,

fraudulently obtaining approximately $5.9 million from over 400 investors.  Compl. ¶ 1.

Plaintiff further alleges that Defendant Bass was the primary orchestrator of the scheme.  Id.

Bass is the sole shareholder, president, and CEO of Swiss Capital Harbor-USA, LLC ("SCH"),

the New York corporation named as a Defendant in this action.  Id. ¶ 13.  Bass also formed – and

installed SCH as the general partner of – each of the Delaware limited partnerships named as

Defendants in this action: Swiss Capital Harbor Fund A Partners, L.P. ("LP A"); Swiss Capital

Harbor Fund B Partners, L.P. ("LP B"); Swiss Capital Harbor Fund C Partners, L.P. ("LP C").

Id. ¶ 14.

The SEC served each Defendant with a Summons and the Complaint, and filed proof of

service with this Court.  Affidavit of Service (Dkt. No. 4).  Only Defendant Bass appeared in

response, submitting a Motion on August 8, 2010 requesting an extension of time to file an

answer.  Dkt. No. 5.  Although the Court granted his request and extended the deadline to

September 1, 2010, Defendants failed to file any response.  Meanwhile, Defendant Bass pled

guilty to parallel criminal charges arising out of these transactions on August 19, 2010.

Christopher Bass, No. 10-CR-166, Dkt. No. 15 ("Plea Agreement").

Plaintiff wrote to Defendant Bass on both September 3, 2010 and September 15, 2010, reminding him of the expired answer deadline and requesting that he confer with Plaintiff regarding the required Civil Case Management Plan.  See Dkt Nos. 10-7, 10-9.  Although Defendant Bass did respond to Plaintiff by mail, he did not file an answer with the Court, and he did not agree to confer on the Civil Case Management Plan.  See Bass Letter of September 7, 2010 (Dkt. No. 10-8) ("Sept. 7 Letter"); Bass Letter of September 20, 2010 (Dkt. No. 10-10) ("Sept. 20 Letter"); Bass Letter of September 30, 2010 (Dkt. No. 10-10) ("Sept. 30 Letter"). Despite his guilty plea, Defendant Bass continued to deny wrongdoing in these letters.  Id. Plaintiff filed a Request for entry of default on September 23, 2010 (Dkt. No. 6), and the Clerk of the Court granted such entry as to each Defendant on October 6, 2010.  Entry of default (Dkt. No. 9).  Plaintiff then filed a Motion for default judgment as to each of the Defendants on December 6, 2010, and properly served each Defendant with notice of the Motion.  See Motion; Certificate of service (Dkt. No. 11).   To date, none of the Defendants have responded to either the Complaint or the Motion, and it has been over a year since any Defendant has appeared in this action.

III.    DISCUSSION

   A. Standard of Review

After the Clerk has filed an entry of default against a party that has failed to plead or otherwise defend, Federal Rule of Civil Procedure 55(b) allows a court to enter default judgment upon application of the opposing party.  FED. R. CIV. P. 55(b).  Default judgment is an extreme sanction, and decisions on the merits are favored.  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir.1981).  However, default judgment is ordinarily justified when a civil party fails to respond

after having received proper notice. See Bermudez v. Reid, 733 F.2d 18, 21 (2d. Cir. 1984).

After an entry of default has been entered, all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default). As the Defendants failed to answer either Plaintiff's Complaint or Motion, and as an entry of default has been made in this case, the Court deems true the relevant and well-pleaded factual allegations in Plaintiff's Complaint.

**B. Defendants' Liability under the Securities and Exchange Acts**

Plaintiff's pleadings, taken as true, establish each of the alleged violations, and the Court finds that default judgment in favor of Plaintiff is appropriate.

*1. Violations of § 5 of the Securities Act*

To establish a *prima facie* case for a violation of § 5 of the Securities Act, the SEC must prove three elements: (1) that no registration statement was in effect as to the securities; (2) that Defendants sold or offered to sell these securities; and (3) that there was a use of interstate transportation, communication, or mail in connection with the sale or offer to sell. See 15 U.S.C. § 77e(a), (c); SEC v. Cavanagh, 1 F. Supp. 2d 337, 361 (S.D.N.Y. 1998). Liability extends to all necessary participants in the sale of securities. Id. at 372.

The Complaint alleges facts sufficient to establish a *prima facie* case that each Defendant committed § 5 violations. First, Defendants failed to register with the Commission the securities offered and sold as part of their Ponzi scheme. Compl. ¶¶ 4, 33. Second, Defendants sold and/or offered to sell these securities to the public. Id. ¶¶ 15-17, 23, 25, 27-31. Third, Defendants used

the telephone, mail, wires, and other means of interstate commerce to offer and sell these

securities to the public.  Id. ¶ 11.  Defendants are deemed to have admitted Plaintiff's claim that

these securities did not fall under any registration exemption.  See id. ¶ 33.  Accordingly, the

Court finds that Defendants violated §§ 5(a) and 5(c) of the Securities Act.

### 2. Violations of Anti-Fraud provisions of the Securities and Exchange Acts

Fraud and deception in the sale of securities through means of interstate commerce or

mails are prohibited both by § 17(a) of the Securities Act and by § 10(b) and Rule 10b-5 of the

Exchange Act.  See 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Section

17(a) prohibits fraud in the offer or sale of securities, while § 10(b) and Rule 10b-5 prohibit,

respectively, employing "any manipulative or deceptive device or contrivance" or any "device,

scheme, or artifice to defraud" in the purchase or sale of securities.  The fraud must concern a

material fact, meaning that there must be a "substantial likelihood that disclosure of the omitted

fact would have been viewed by the reasonable investor as having significantly altered the 'total

mix' of information made available."  Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)

(quoting TSC Indust., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).  Further, the defendant

must have acted with *scienter* in committing the fraud.  SEC v. Monarch Funding Corp., 192

F.3d 295, 308 (2d. Cir. 1999).

Taking all of Plaintiff's factual allegations as true, the Complaint alleges facts sufficient

to find that Defendants violated these anti-fraud provisions.  Defendant Bass, working through

SCH and LPs A, B, and C, operated a Ponzi scheme that obtained approximately $5.9 million

from over 400 investors between January 2007 and June 2009.  Compl. ¶¶ 1-2.  Defendant Bass

told investors that their funds would be invested in various enterprises in Europe, but instead

used most of the invested principal to pay his own personal expenses, to operate SCH and the

LPs, and to pay previous investors.  Compl. ¶¶ 1-3.

These false statements regarding the use of invested funds are clearly material, and would

have been substantially likely to have been perceived as important by a reasonable investor.  See,

e.g., SEC v. Research Automation Corp., 585 F.2d 31, 35-36 (2d Cir. 1978) (failure to reveal to

investors how funds would be used was material under the anti-fraud provisions at issue in this

case).  Finally, Bass made a multitude of false statements to investors, regarding such matters as

reported returns and use of funds, that he must have known to be false.  See Compl. ¶¶ 17-18, 22,

26, 31, 34-36.  Accordingly, Bass – and the organizations he controlled – acted with the requisite

*scienter* under the Securities and Exchange Acts.

It should be noted that, as part of his guilty plea of August 19, 2010, Defendant Bass

admitted the facts surrounding his participation in this scheme.  Plea Agreement at 6-13.  Bass –

and the corporation and limited partnerships that he operated through – are therefore estopped by

the Plea Agreement from denying liability in this case.  See U.S. v. DiBona, 614 F.Supp 40, 44

(E.D. Pa. 1984) (holding that corporation could not deny civil liability after top officers pled

guilty in parallel criminal case).

**B. Relief**

*1. Permanent Injunctive Relief*

Section 20(b) of the Securities Act and § 21(d) of the Exchange Act authorize the SEC to

seek permanent injunctive relief against future securities law violations with a showing that (1)

violations of the securities laws have occurred and (2) there is a reasonable likelihood of future

violations.  15 U.S.C. §§ 77t(b), 78u(d); see SEC v. Commonwealth Chem. Sec. Inc., 574 F.2d

6

90, 99-100 (2d Cir. 1978).  The Court has broad discretion to issue such an injunction.  SEC v.

Manor Nursing Centers, Inc., 458 F.2d 1082, 1100 (2d Cir. 1972).  Further, an injunction may be

issued as part of a default judgment upon a factual finding that such relief is warranted.  See SEC

v. Mgmt. Dynamics, 515 F.2d 801, 814 (2d Cir. 1975); SEC v. Anticevic, Dkt. No. 05-CV-6991,

2009 WL 4250508, at *3-4 (S.D.N.Y. Nov. 30, 2009); SEC v. Lawbaugh, 359 F. Supp. 2d 418,

424-25 (D. Md. 2005).

To determine whether there is a reasonable likelihood that a defendant will commit future

violations, courts have looked at various factors, including "the fact that the defendant has been

found liable for illegal conduct; the degree of scienter involved; whether the infraction is an

'isolated occurrence;' whether defendant continues to maintain that his past conduct was

blameless; and whether, because of his professional occupation, the defendant might be in a

position where future violations could be anticipated."  SEC v. Cavanagh, 155 F.3d 129, 135 (2d

Cir. 1998) (citing SEC v. Commonwealth Chem. Sec. Inc., 574 F.2d at 100).

In this case, Defendants' scheme was not an "isolated occurrence," but instead was

carried out over a period of several years.  Compl. ¶ 1.  As described above, Defendants acted

with a the requisite level of *scienter* under the Securities and Exchange Acts.  In addition,

although he did enter a guilty plea in parallel criminal proceedings, Bass continues to deny

wrongdoing.  See Sept. 7 Letter; Sept. 20 Letter; Sept. 30 Letter.

Finally, Defendants' violations in this case were particularly egregious.  Operating

through SCH and the LPs, Bass orchestrated a Ponzi scheme that received over $5.9 million from

investors.  Compl. ¶ 37.  Although he made detailed claims regarding how and where the funds

would be invested, Bass instead used invested funds to improperly pay personal and corporate

expenses, and to satisfy redemption requests from other investors.  Id. ¶ 34.  Only approximately

$2 million was invested as promised.  Id. ¶ 32.  Defendants each profited substantially from this

wrongdoing: Bass improperly withdrew over $600,000 of investor funds for personal use, and

directed nearly $1.2 million in principal to pay expenses of SCH and the LPs.  Id.  Based on a

consideration of all of these factors, the Court finds that a permanent injunction against future

violations is warranted in this case.

*2. Monetary Relief*

Under § 20(d) of the Securities Act and § 21(d)(3) of the Exchange Act, the Court has

discretion to impose civil penalties for a violation of the securities laws.  See 15 U.S.C. § 77t(d);

15 U.S.C. § 78u(d)(3).  Disgorgement of ill-gotten profits, along with prejudgment interest, may

also be an appropriate remedy.  The Court therefore grants Plaintiff's request for leave to seek

such relief following sentencing in the pending criminal case against Defendant Bass.

Although a defendant's default "is deemed to constitute a concession of all well pleaded

allegations of liability, it is not considered an admission of damages."  Greyhound Exhibitgroup,

Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d

702, 707 (2d Cir. 1974)).  Following Defendant Bass's sentencing, Plaintiff will therefore be

required to show a basis for the amount of monetary relief sought through either an evidentiary

hearing or production of detailed documentary evidence before such relief may be granted.

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111(2d Cir.

1997) (quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989))

("under Rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it

ensured that there was a basis for the damages specified in the default judgment.'") (additional

citations omitted).

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion for default judgment is **GRANTED** (Dkt. No. 10)

consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants are permanently restrained and enjoined from violating § 5

of the Securities Act of 1933 (15 U.S.C. § 77e); § 17(a) of the Securities Act of 1933 (15 U.S.C.

§ 77q(a)); and § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-

5 thereunder (17 C.F.R. § 240.10b-5); and it is further

**ORDERED**, that, consistent with this opinion, Plaintiff is granted leave to file for

disgorgement, prejudgment interest, and civil monetary penalties against Defendants following

sentencing in the pending criminal case against Defendant Christopher Bass (U.S. v. Christopher

Bass, 10-CR-166 (N.D.N.Y.) (Kahn, J.)); and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:       September 14, 2011
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge