UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                           Plaintiff,

    -against-                                           1:10-CV-00606 (LEK/DRH)

CHRISTOPHER W. BASS; SWISS
CAPITAL HARBOR-USA, LLC; SWISS
CAPITAL HARBOR FUND A
PARTNERS, L.P.; SWISS CAPITAL
HARBOR FUND B PARTNERS, L.P.;
and SWISS CAPITAL HARBOR FUND C
PARTNERS, L.P.,

                           Defendants.

## **DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") brought this action against Defendants alleging violations of the securities laws through the operation of a Ponzi scheme. Dkt. No. 1 ("Complaint") ¶ 6. After the extended failure of any Defendant to appear in this action or to respond to the allegations in the Complaint, on September 14, 2011, the Court granted the SEC's Motion for default judgment (Dkt. No. 10) as to liability and injunctive relief. Dkt. No. 12 ("September Order") at 4-8. The Court also granted the SEC leave to seek disgorgement, prejudgment interest, and civil penalties after the criminal case then pending against Defendant Christopher W. Bass ("Defendant Bass") before the Court was resolved. Id. at 8. On December 12, 2011, the Court entered judgment against Defendant Bass in United States v. Bass, 10-CR-166, Dkt. No. 42, Judgment (N.D.N.Y. filed Dec. 12, 2010) (Kahn, J.). The SEC

subsequently filed this Motion seeking an entry of final judgment against Defendants incorporating the injunctive relief previously granted by the Court, granting the monetary relief of disgorgement and prejudgment interest, and deeming such monetary relief satisfied by the criminal restitution order entered against Defendant Bass in his parallel criminal case. Dkt. No. 14 ("Motion") at 1-2.[1]

For the reasons set forth below, the SEC's Motion is granted in full. The Court renews its previous Order permanently enjoining Defendants from violating §§ 5 and 17(a) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.[2] In addition, the Court orders Defendants, who the Court finds are jointly and severally liable, to disgorge the $4,557,632 they received from their scheme, as well as pay $645,422 in prejudgment interest on this sum. Finally, as requested by the SEC, this total sum of $5,203,054 is deemed satisfied by the criminal restitution order entered against Defendant Bass in his parallel criminal case.

## II. BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background recounted in its prior ruling on this case. This ruling, therefore, sets forth only those facts deemed necessary to an understanding of the issues raised in, and the decision rendered on, the SEC's Motion for final judgment. Because an entry of default has been made in this case, the Court deems true the relevant and well-pleaded factual allegations in the SEC's Complaint. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997) (recognizing

---

[1] The SEC does not, however, seek to impose civil monetary penalties against Defendant Bass in light of his criminal conviction and sentence. Mot. at 5

[2] Sections 5 and 17(a) of the Securities Act of 1933 are codified at 15 U.S.C. §§ 77e and 77q(a). Section 10(b) of the Securities Exchange Act of 1934 is codified at 15 U.S.C. § 78j(b), while Rule 10b-5 thereunder is codified at 17 C.F.R. § 240.10b-5.

that the factual allegations in the complaint, except those relating to damages, are deemed true after default).

From January 2007 to June 2009, Defendants operated a Ponzi scheme through which they defrauded over 400 investors of approximately $5.9 million. Compl. ¶ 1. Between January and December 2007, Defendant Bass solicited investments in Revisco Finanz AG ("Revisco"), a Swiss company, by misrepresenting both the rate of return on investments in that company and how Defendant Bass would use investor funds. Id. at ¶¶ 15-18. At least 70 investors gave Defendant Bass funds to invest in Revisco. Id. ¶ 19. Only a small portion of those funds were actually invested, however, with much of the remaining investor principal improperly used to pay Defendant Bass's personal expenses. Id. When Revisco was later declared bankrupt and ordered dissolved and liquidated by the Swiss Federal Banking Commission, Defendant Bass assured investors that their investments were secure and being transferred to Defendant Swiss Capital Harbor-USA, LLC ("SCH"), of which Defendant Bass was the sole shareholder, president, and chief executive officer. Id. ¶¶ 1, 20. In fact, investor funds actually invested by Defendant Bass in Revisco were frozen by Swiss authorities and therefore incapable of being transferred. Id. ¶ 21.

In December 2007, Defendant SCH formed Defendants Swiss Capital Harbor Fund A Partners, L.P., Swiss Capital Harbor Fund B Partners, L.P., and Swiss Capital Harbor Fund C Partners, L.P. (collectively "the SCH-LPs"). Id. ¶ 23. Defendant SCH was installed as the general partner of all three SCH-LPs. See id. ¶ 31. Defendants Bass and SCH used the SCH-LPs to solicit investments. Id. Investors were told by Defendants Bass and SCH that these investments would be made through a European trust and would earn a rate of return ranging from 2% to 5%. Id. ¶¶ 24, 28-29. Defendants never filed a registration statement with the SEC for these securities. Id. ¶ 33.

3

The offering memoranda for all three SCH-LPs stated that SCH could only use monthly investment returns on the funds invested by the SCH-LPs to pay SCH's operating expenses. Id. ¶ 31. Of the funds collected by Defendants Bass and SCH for investment in the SCH-LPs, only a small portion of them were actually invested through the European trust. Id. ¶ 32. The remaining amount of investor principal was improperly used to pay Defendant Bass's personal expenses, to pay Defendants SCH's and the SCH-LPs' operating costs, and to satisfy investor's redemption requests. Id. In July 2009, when Defendants could no longer pay redemption requests, their Ponzi scheme collapsed. Id. ¶ 37.

On August 19, 2010, Defendant Bass pleaded guilty to parallel criminal charges arising out of this conduct. Bass, No. 10-CR-166, Dkt. No. 15, Plea Agreement. Judgment was entered against him on December 2, 2011. Bass, 10-CR-166, Dkt. No. 42, Judgment. The judgment provided that he serve 151 months incarceration and three years supervised release, as well as pay $5,308,340.02 in restitution to the scheme's victims. Id.

Under the leave granted by the Court in its prior ruling in this case, on March 19, 2012, the SEC filed this Motion for final judgment. To date, none of the Defendants have responded to the Motion, and it has been several years since any Defendant has appeared in this action.

## III. DISCUSSION

### 1. Disgorgement

A district court has broad discretion to order disgorgement of profits obtained through violation of federal securities laws and, if ordered, in calculating the disgorgement amount. SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996); see also SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1104 (2d Cir. 1972). "[T]he primary purpose of disgorgement orders is

4

to deter violations of the securities laws by depriving violators of their ill-gotten gains." SEC v. Fischbach Corp., 133 F.3d 170, 175 (2d Cir. 1997); First Jersey, 101 F.3d at 1474. The disgorgement amount need only be a "reasonable approximation of profits causally connected to the violation," and "'any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose conduct created that uncertainty.'" SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir. 1995) (quoting SEC v. First City Fin. Corp., 890 F.2d 1215, 1231-32 (D.C. Cir. 1989)). Because disgorgement is remedial and not punitive, "the court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing." SEC v. MacDonald, 699 F.2d 47, 54 (1st Cir. 1983).

The SEC seeks an award of $4,557,632 in disgorgement from Defendants. Mot. at 1; Plaintiff's Memorandum of law in support of final judgment (Dkt. No. 14-1) ("Pl.'s Mem.") at 2. In its September Order, the Court informed the SEC that it would be required to show a basis for any monetary relief it sought through either an evidentiary hearing or production of detailed documentary evidence. Sept. Order at 8 (citing Ace Shipping Corp., 109 F.3d at 111). Here, although no evidentiary hearing was held, the SEC submitted exhibits containing a comprehensive listing of Defendants' bank account activity involving investor funds and the Declaration of Liora Sukhatme, an SEC attorney, in which she explains the origin of this information and how the Commission used it to calculate the disgorgement amount. See generally Dkt. Nos. 12-2 ("Sukhatme Declaration"), 12-3 ("Exhibits A-D"). According to Sukhatme, the award amount was derived by subtracting the $1,397,515 Defendants paid back to investors as redemptions from the total $5,955,147 investors paid to Defendants during the course of the Ponzi scheme. Sukhatme Decl. ¶¶ 6-8; Pl.'s Mem. at 2. Each individual payment – from investors to Defendants, as well as

5

from Defendants back to investors – is catalogued in the SEC's exhibits.

After a thorough consideration of these exhibits and the Sukhatme Declaration, the Court is satisfied that the requested disgorgement award is a "reasonable approximation of profits causally connected" to the Defendants' Ponzi scheme. Patel, 61 F.3d 137, 139 (quoting First City Fin. Corp., 890 F.2d at 1231). Any risk of uncertainty as to this amount falls on Defendants, who failed to appear or respond in this action to refute the SEC's calculations. What risk may be present is in any case mitigated by Defendant Bass's guilty plea in his parallel criminal action, which is based on the same transactions at issue here. Therefore, the Court concludes that the SEC is entitled to an award of disgorgement in the amount of $4,557,632, which reasonably reflects the amount of Defendants' ill-gotten gains.

**2. Prejudgment Interest**

Like with disgorgement, a district court has broad discretion to order prejudgment interest to ensure that violators do not profit from illegal activity. SEC v. Universal Express, Inc., 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007). "Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity." SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). In considering whether to award prejudgment interest, a court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." First Jersey, 101 F.3d at 1476 (internal quotation marks omitted). "In an enforcement action brought by a regulatory agency, the remedial purpose of the statute takes on special importance." Id.

The SEC seeks an award of prejudgment interest on Defendants' ill-gotten gains in the amount of $645,422. Mot. at 1; Pl.'s Mem. at 4-5. This amount reflects an interest period from January 2007 through February 29, 2012. Sukhatme Decl. ¶¶ 6, 9. It is calculated using the IRS underpayment rate, which is an appropriate interest rate to use in calculating prejudgment interest. Sukhatme Decl. ¶ 9; First Jersey, 101 F.3d at 1476. The Court has considered the above factors, placing special importance on the remedial purpose of the securities laws, and concludes that prejudgment interest in the amount of $645,422 is warranted in this case.

### 3. Joint and Several Liability

The SEC argues that Defendants Bass, SCH, and the SCH-LPs are jointly and severally liable for the total combined disgorgement and prejudgment interest amount of $5,203,054. The Court agrees.

In cases where "an individual or entity has collaborated or worked closely with another individual or entity to violate the securities laws, those individuals and/or entities may be held jointly and severally liable for any disgorgement." SEC v. Universal Express, Inc., 646 F. Supp. 2d 552, 563 (S.D.N.Y. 2009). The SEC is "not required to trace every dollar of proceedings" nor "identify misappropriated monies which have been commingled." SEC v. Anticevic, No. 05-CV-6991, 2009 WL 4250508, at *4 (S.D.N.Y. Nov. 30, 2009) (quoting SEC v. Great Lakes Equities Co., 775 F. Supp. 211, 214 n.22 (E.D. Mich 1991), aff'd, 12 F.3d 214 (6th Cir. 1993)). It is understood that "[g]enerally . . . 'apportionment is difficult or even practically impossible because [the] defendants have engaged in complex and heavily disguised transactions." Universal Express, 646 F. Supp. 2d at 563 (quoting SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997)). The joint-violators bear the burden of demonstrating that their liability can be reasonably

7

apportioned. Id.

Here, the Complaint's allegations establish that Defendants Bass, SCH, and the SCH-LPs collaborated in violating the securities laws. Defendant Bass owned Defendant SCH and used it and the SCH-LPs as vehicles to solicit investments. Compl. ¶ 23. Defendant Bass told investors that SCH and the SCH-LPs would pool investor funds and invest them through a European trust. Id. ¶ 30. A review of Defendants' bank records shows that investor funds were commingled within the various bank accounts of Defendants SCH and the SCH-LPs. Sukhatme Decl. ¶ 12. Defendant Bass solicited investments directly as well as through sales agents employed by Defendant SCH, and Defendant SCH acted as the general partner in the SCH-LPs. Compl. ¶¶ 25, 31.

On the basis of this evidence of collaboration and commingling, the Court concludes that Defendants are jointly and severally liable to the SEC for the total combined disgorgement and prejudgment interest amount of $5,203,054.

### 4. Permanent Injunctive Relief

Finally, the SEC seeks to permanently enjoin Defendants from future violations of §§ 5 and 17(a) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5. Mot. at 1. Because the Court already granted this relief in its prior ruling, the Court refers to that prior ruling for its analysis on the issue. See Sept. Order at 6-8. As circumstances have not changed, the Court again concludes, based on its prior analysis, that a permanent injunction against future violations of these securities laws is warranted in this case.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for final judgment (Dkt. No. 14) is **GRANTED**; and it

is further

**ORDERED**, that Defendants are jointly and severally liable to the SEC for the total combined disgorgement and prejudgment interest amount of $5,203,054. This sum is deemed satisfied by the criminal restitution order entered against Defendant Bass in his parallel criminal case; and it is further

**ORDERED**, that Defendants are permanently restrained and enjoined from violating § 5 of the Securities Act of 1933 (15 U.S.C. § 77e); § 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a); and § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. § 240.10b-5); and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:   October 26, 2012
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge